**SIGNED this 28th day of June, 2011**

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>APPALACHIAN OIL COMPANY, INC.,<br><br>Debtor. | No. 09-50259<br>Chapter 11 |
| APPALACHIAN OIL COMPANY, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE VIRGINIAN TRAVEL PLAZA, INC.,<br><br>Defendant. | Adv. Pro. No. 10-5063 |

## M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Mark S. Dessauer, Esq.<br>Hunter, Smith & Davis<br>Post Office Box 3740<br>Kingsport, Tennessee 37664<br>*Attorney for Plaintiff* | Daniel R. Bieger, Esq.<br>Copeland & Bieger, P.C.<br>Post Office Box 1296<br>Abingdon, Virginia, 24210<br>*Attorney for Defendant* |

In this adversary proceeding, the debtor Appalachian Oil Company ("AppCo") seeks to avoid and recover as preferential transfers under § 547 of the Bankruptcy Code $78,764.10 in prepetition payments to The Virginian Travel Plaza Inc. ("VTP"). In a counterclaim, VTP seeks return of funds which AppCo allegedly holds as a constructive bailee or trustee. Both parties have moved for summary judgment. Regarding AppCo's preference claim, VTP's motion will be granted and AppCo's denied, the court having concluded that the transfers were not property of the debtor. Summary judgment on the counterclaim will be denied because there is a genuine issue of material fact for trial. This is a core proceeding. *See* 28 U.S.C. 157(b)(2)(F).

I.

The following facts do not appear to be in dispute.[1] Prior to AppCo's bankruptcy filing, AppCo supplied VTP with gasoline and other petroleum products that VTP sold at its convenience store. The parties' agreement provided that AppCo would supply gasoline and other petroleum products upon credit terms to VTP, with AppCo then directly collecting the proceeds from credit card purchases that were made by customers at VTP's store.[2] AppCo would process the credit card transactions, deposit the proceeds into its general operating account, and after deducting the amounts owed to it for the petroleum products, refund the balance to VTP.

In late 2008, AppCo informed VTP that it was unable to supply gasoline and granted VTP permission to obtain an alternate supplier for 30 days or until it was notified that AppCo could resume deliveries. Consequently, VTP began purchasing gasoline from Mack Oil. Nonetheless, AppCo continued to collect the proceeds from the credit card sales at VTP's store, even though AppCo was no longer supplying any products to VTP, and continued to refund the collected proceeds to VTP, with no deductions for any obligations owed to AppCo. After VTP switched to a new supplier of gasoline, AppCo refunded to VTP proceeds totaling $78,764.10 by transfers that

---

[1] The facts set forth in the body of this memorandum are taken from the parties' Statements of Undisputed Material Facts to which no objections were made; the amended complaint, to the extent admitted in the answer; and the parties' memoranda of law.

[2] Although both parties acknowledge the existence of a May 7, 2004 Sales Agreement in their pleadings, the agreement was never made a part of the record.

took place in December 2008 and January 2009.[3] With the exception of the last payment which was by check, all of the refunds from AppCo to VTP were accomplished by wire disbursement from AppCo's bank account.

On January 22, 2009, AppCo executed a "Sales Agreement Release" that permanently released VTP from its obligation to purchase gasoline and other petroleum products from AppCo. The Release noted that AppCo was still obligated to pay VTP "for the total outstanding balance for credit cards." Apparently, the latter was a reference to the fact that AppCo had failed to refund to VTP all of the proceeds from the credit card purchases it had collected on VTP's behalf in the preceding six weeks.

On February 9, 2009, AppCo filed for bankruptcy relief under chapter 11. Subsequently, VTP filed a proof of claim, asserting that it was still owed $24,886.84 for credit card transactions collected by AppCo for VTP between December 2, 2008, and January 8, 2009.

On August 9, 2010, AppCo initiated the current adversary proceeding against VTP, later amending its complaint on January 24, 2011. AppCo alleges that the $78,764.10 in transfers it made to VTP in December 2008 and January 2009 are avoidable and recoverable as preferences. In its answers, VTP denies that the funds it received were property of AppCo, a required element of a preference, and contends that AppCo held the funds either in a constructive bailment or constructive trust for VTP's benefit. VTP also denies that the payments were on account of an antecedent debt or that they enabled it to receive more than it would have received if the payments had not been made and AppCo liquidated, other essential preference elements. In its counterclaim, VTP asserts that the $24,886.84 in credit card proceeds that AppCo failed to refund to VTP do not constitute property of the estate and must be turned over to VTP, or alternatively, that AppCo is liable in this amount for conversion.

Both parties have now moved for summary judgment on AppCo's amended complaint, and

---

[3] The payments were in the following amounts: $5,064.54 on December 4; $2,637.38 on December 8; $5446.23 on December 9; $1,842.69 on December 10; $4,387.46 on December 15; $14,385.80 on December 22; $5,000 on December 26; $20,000 on December 31; and $20,000 on January 6, 2009.

3

AppCo seeks summary judgment on VTP's counterclaim. VTP's memorandum in support of its motion for summary judgment presents only one argument: that the transfers to it were not property of AppCo.

II.

Federal Rule of Civil Procedure 56, applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7056, provides that the court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding such a motion, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)). There is a genuine issue for trial "only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The movant bears the initial burden of showing a lack of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 254 (1986). After it does so, the nonmoving party must provide evidence to support denying the motion; even though all inferences are construed in his favor, the nonmoving party "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). Summary judgment is appropriate if a rational factfinder, after reviewing the entire record, could not find for the nonmoving party. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

The foregoing standard does not change simply because both parties move for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

III.

Under section 547(b) of the Bankruptcy Code, a chapter 11 debtor-in-possession may avoid any transfer of an interest of the debtor in property:

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made–

        (A) on or within 90 days before the date of the filing of the petition . . .

    (5) that enables such creditor to receive more than such creditor would receive if–

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b); *see also Union Bank v. Wolas*, 502 U.S. 151, 154–55, 112 S. Ct. 527 (1991). As the party seeking to avoid the transfers, the debtor-in-possession has the burden of proof on all elements. 11 U.S.C. § 547(g).

The first requirement of a preference is that the debtor have an interest in the transferred property. The Supreme Court has found that this element is satisfied if the property would have been property of the estate had it not been transferred. *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258 (1990). Property of the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, if a debtor only holds legal title in property and not an equitable interest, the property only becomes property of the estate to the extent of the debtor's legal title, not to the extent of any equitable interest that the debtor does not hold. 11 U.S.C. § 541(d). Because a debtor does not own an equitable interest in property it holds in trust for another, that property would not be property of the estate. *Begier* v. *IRS*, 496 U.S. at 59; *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002).

Similarly, property in which a bailee holds a possessory interest, but no legal or equitable

interest, would not constitute property of its bankruptcy estate. *Lyon v. Contech Constr. Prods., Inc. (In re Computrex, Inc.)*, 403 F.3d 807, 812 (6th Cir. 2005). *See also City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*, 329 F.3d 204, 210 (1st Cir. 2003) ("The plain text of § 541(d) excludes property from the estate where the bankrupt entity is only a delivery vehicle and lacks any equitable interest in the property it delivers."). Applying these principles to the present case, to the extent that AppCo held the funds it collected on VTP's behalf in trust or pursuant to a bailment, as VTP's argues, these funds would not be property of the bankruptcy estate and, consequently, not property of the debtor within the meaning of § 547(b).

AppCo disputes the contention that it did not hold a property interest in the funds it transferred to VTP. AppCo observes that there was no requirement that it segregate from its other funds the proceeds from VTP's credit card transactions and notes that the proceeds were deposited in its general account, where they were commingled with AppCo's other funds. According to AppCo, it had unlimited control over the proceeds which establishes its ownership interest, citing *MBNA Am. Bank, N.A. v. Meoli (In re Wells)*, 561 F.3d 633, 635 (6th Cir. 2009) ("[T]he degree of control a debtor exercises over the property transferred is the principal determinant of whether the debtor has 'an interest' in the property such that its transfer may be avoided under § 547(b).").

In this court's view, the present dispute is governed by the Sixth Circuit Court of Appeals' *Computrex* decision. *In re Computrex, Inc.*, 403 F.3d 807 (6th Cir. 2005). In that case, Contech, a manufacturer and distributor of corrugated metal and plastic pipe, employed various independent freight carriers to ship its finished goods to customers throughout the country. Originally, Contech was billed by and paid these carriers directly. However, with an increase in business, Contech decided to engage the debtor Computrex to assist it with the processing and payment of Contech's freight charges. Under the parties' arrangement, after receiving bills from Contech's carriers, Computrex would send a compiled invoice to Contech at the end of each week; on the following Monday Contech would then wire payment sufficient to cover both the freight carriers' invoices and Computrex's fee; and on Tuesday Computrex would write checks to and pay the carriers. After a period of time, however, Computrex began delaying payment to the carriers so that it could "float" the monies it had received from Contech. In some cases, Contech delayed payment for as much as 18 to 21 days. *Id.* at 809.

6

After an involuntary chapter 7 petition was filed against Computrex, the bankruptcy trustee filed a preference action against Contech, asserting that the sums that Computrex had paid to Contech's freight carriers were preferences under § 547 of the Bankruptcy Code. The bankruptcy court granted Contech's motion to dismiss, concluding that the funds that the debtor transferred to Contech's carriers were not part of the debtor's estate because the debtor was merely a disbursing agent for Contech. The district court affirmed, and the trustee appealed to the Sixth Circuit. *Id.* at 810.

As does the debtor in the present case, the trustee in *Computrex* argued that the debtor could not have been a mere disbursing agent because the funds Contech paid to the debtor were commingled in the debtor's bank account, there was no indication that Contech's funds were earmarked to pay Contech's carriers, and the debtor exercised total discretion and control over the funds, deciding who and when to pay. *Id.* at 811. The court of appeals rejected this argument in total, observing that Contech had transferred the funds to the debtor with the sole purpose of allowing the debtor to pass them on to Contech's carriers. *Id.* "The fact that the [parties' agreement] did not explicitly prohibit the Debtor from commingling its clients' funds, and the fact that the Debtor did in fact commingle its clients' funds, does not establish that the funds were part of the Debtor's estate." *Id.* at 812. Similarly, the fact that the debtor could have theoretically used the funds for a purpose other than paying Contech's carriers did not mandate a contrary result. "[W]e will not condone a debtor's improper application of funds to justify [the conclusion] that the funds were property of the debtor's estate." *Id.* at 812-13 (citing, *inter alia*, *In re UDI Corp.*, 301 B.R. 104, 114-15 (Bankr. D. Mass. 2003) ("'Control' over commingled funds, for preference purposes, means the 'unfettered' right to use the funds. "Control' does not mean the ability to steal the money, or use if for personal purposes in breach of duty.")). *See also Schilling v. Electronic Realty Assoc., Inc. (In re Hearn)*, 49 B.R. 143, 145 (Bankr. W.D. Ky. 1985) ("The opportunity to exercise improper control is not synonymous with the exercise thereof, and sufficient to create an interest of debtor's estate thereto.").

The court of appeals in *Computrex* reasoned that the debtor acted as an bailee or agent of the manufacturer, even though there was no indication that the parties' agreement utilized bailment or agency language. As stated by the court:

7

> The Debtor here is in essentially the same position as a bailee: Contech (the bailor) directed the Debtor (the bailee) to take possession of Contech's money and subsequently disburse it to Contech's creditors. *See Jones v. Hanna*, 814 S.W.2d 287, 288 (Ky. App. 1991)[4] ("A bailment imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished."); *Hargis v. Spencer*, 254 Ky. 297, 71 S.W.2d 666, 667 (1934) (recognizing that there can be bailment of money). As a bailee, the Debtor lacked any property interest in Contech's money. Collier, *supra*, ¶ 551.06[1][1] ("It has been settled under the Code and prior law that, if property was in a debtor's hands as bailee or agent, the debtor's estate holds only the same interest, and the bailor or principal could recover the property or its proceeds."). The fact that a bailee, which has a possessory interest in the property entrusted to him, but no legal or equitable interest, may commingle the funds his clients entrust to him does not give the bailee any property interest in the funds. *See In re Crouthamel Potato Chip Co.*, 6 B.R. 501, 507 (Bankr. E.D. Pa. 1980) ("It has been consistently held that where there exists a true agency relationship, such as a bailment, a transfer by the agent of agency property to the principal is not a voidable preference. The reason is that the transfer is not of property of the debtor but of property of the principal.") (citations omitted).

*Id.* at 812.

Based on this analysis, the court of appeals affirmed the lower courts' rulings, concluding that "the Debtor was merely a disbursing agent which did not exercise sufficient control and dominion over the funds for them to constitute part of its estate." *Id.* at 813.

Applying *Computrex* to the present case, there is no indication from the record that the parties' agreement expressly contemplated a bailment or agency arrangement. Nonetheless, as *Computrex* illustrates, the lack of specific bailment language is not determinative. Under Tennessee law,[5] a bailment is defined as "a delivery of personalty for a particular purpose or on mere deposit,

---

[4] The *Computrex* opinion does not set forth the basis for the court of appeals' reference to Kentucky state law, although the case did arise out of the Eastern District of Kentucky. Nonetheless, it is well settled that whether a debtor has an interest in property is determined by state law, absent controlling federal law. *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S. Ct. 1386 (1992); *Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct.914 (1979).

[5] Although is it unclear which state law should govern (AppCo is a Tennessee corporation, VTP is a Virginia corporation, and there is no indication from the record where the parties'
(continued...)

8

on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it." *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 252 (Tenn. App. 1980). Here, it is undisputed that AppCo was obligated to refund to VTP the proceeds from its credit card sales once AppCo was no longer supplying product to VTP.

Moreover, "a bailment relation with all the attendant legal incidents may arise not only from an express agreement but may be implied in fact or in law." *Aegis Investigative Grp. v. Metro Gov't of Nashville and Davidson Cnty.*, 98 S.W.3d 159, 163 (Tenn. App. 2002). A constructive bailment or bailment implied in law is created "where a person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he should, on princip[les] of justice, keep it safely and restore it or deliver it to the owner." *Id.* In the instant case, AppCo was collecting the proceeds from VTP's credit card sales even though AppCo was not supplying the gasoline sold and VTP was not otherwise indebted to AppCo. Thus, AppCo had no entitlement to the proceeds it was collecting. In effect, AppCo began acting as a clearing house for VTP by collecting the proceeds from VTP's credit card sales and then returning them to VTP. Under these circumstances, the "principles of justice" would dictate undeniably that AppCo had no interest in the proceeds and must return to VTP the funds that it held on its behalf. As *Computrex* instructs, the mere fact that VTP's credit card proceeds went into AppCo's bank account is insufficient to give AppCo the requisite level of interest or control over the funds in question. *See also Dayton Title Agency, Inc. v. White Family Cos. (In re Dayton Title Agency, Inc.)*, 262 B.R. 719, (S.D. Ohio 2001) ("[The debtor's] control over the transfer does not, by itself, establish a property interest in the

---

⁵(...continued)
agreement was performed), there does not appear to be any relevant distinction between Tennessee and Virginia law on this issue. *Cf. K-B Corp. v. Gallagher*, 237 S.E.2d 183, 185 (Va. 1977) ("[F]or a bailment to arise there must be a delivery of the chattel by the bailor and its acceptance by the bailee. . . . [N]o particular formality or actual meeting of the minds is necessary to establish the relationship."). Moreover, money has been the subject of bailment cases decided under both Tennessee and Virginia law. *See Ridenour v. Woodward*, 179 S.W. 148 (Tenn. 1915); *First State Bank of Monroe v. Connoley*, 109 S.E. 301 (Va. 1921). While these are old cases, no more recent case from these jurisdictions has addressed the issue or suggested that money may not be bailed.

9

funds."); *Branch v. Hill, Holliday, Connors, Cosmopoulos, Inc. Advertising (In re Bank of New England Corp.)*, 165 B.R. 972, 977 (Bankr. D. Mass. 1994) (citing *In re Comprop Inv. Props., Ltd.*, 81 B.R. 101, 102 (Bankr. M.D. Fla. 1987) ( "[F]unds may stand in a bank account in the name of the debtor, carry the debtor's tax identification number, and still not be property of the estate.")).

Because the court has concluded under the authority of *Computrex*, that AppCo held the proceeds from VTP's credit card sales pursuant to a constructive bailment, it is not necessary to consider VTP's alternative argument that the proceeds were held in a constructive trust.[6] Similarly, it is unnecessary to determine whether the other elements of a preference exist.[7] Absent the transfer of "an interest of the debtor in property," the preference action must fail.

With respect to VTP's counterclaim, AppCo argues that the counterclaim must be dismissed and VTP's claim resolved under the claims resolution procedure of the Bankruptcy Code. While AppCo would be correct if VTP merely had a claim against the debtor, as recognized in this memorandum AppCo had no interest in the funds for which VTP seeks turnover. *See also In re Newpower*, 233 F.3d 922, 933 (6th Cir. 2000) (quoting 4 *Collier on Bankruptcy* ¶ 541.06[1][a] (15th ed. 1999) ("[I]t has been settled under the Code and prior law that absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the debtor's estate holds only the same interest, and the bailor or principal could recover the property or its proceeds."). Nonetheless, the fact that AppCo commingled VTP's money with its own funds and had not returned them as of the bankruptcy filing raises an impediment that hinders VTP's recovery of its funds. "In

---

[6] With respect to the constructive trust issue, AppCo argues that even if a constructive trust existed, the transfers are nonetheless subject to avoidance unless VTP can trace the transfers to the original proceeds, which tracing is virtually impossible because of the commingling that occurred. To the extent that AppCo intended for this tracing argument to apply to a bailment, the court must reject it on the basis that no tracing requirement was imposed in *Computrex*.

[7] In a footnote in the *Computrex* decision, the Sixth Circuit observed that the transfers in question were not on account of an antecedent debt. *In re Computrex, Inc.*, 403 F.3d at 810 n.1 ("Although the payment agreement obligated the Debtor to complete the transaction by disbursing Contech's money to its freight carriers, the Debtor disbursed this money not because of an "antecedent debt" it owed to Contech, but because of its contractual promise to Contech for which the Debtor had been paid.").

a true consignment arrangement, bailment, or agency, recovery by the bailor, principal, or consignor rests upon identification. When the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the estate." *Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co.*, 74 F.3d 854, 860 (8th Cir. 1996); *cf.* 5 *Collier on Bankruptcy* ¶ 541.05[7] (16th ed. 2010) (noting that reclamation of pledged property is subject to the usual doctrine of tracing if the property has been commingled with other property of the debtor pledgee, and that if the property cannot be traced, the pledgor is relegated to the position of a general unsecured creditor). Thus, in order to recover outright the funds belonging to it, VTP must be able to trace the funds in AppCo's bank account. Absent tracing, the relationship must be treated as a creditor-debtor relationship under the Bankruptcy Code such that VTP becomes a mere creditor of the estate. *Id.*

AppCo alleges that tracing is an impossible task. However, this allegation is not the subject of any proof, nor it is set forth in the pleadings or the parties' Statements of Undisputed Material Facts. Accordingly, for the present time, a genuine issue of material fact remains for trial as to whether VTP will be able to trace the funds belonging to it. Summary judgment on this issue will be denied.

### IV.

An order will be entered in accordance with the foregoing, granting VTP's motion for summary judgment on AppCo's cause of action and denying AppCo's summary judgment motion in full.

# # #