

**SIGNED this 11th day of April, 2012**

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>APPALACHIAN OIL COMPANY, INC.,<br><br>Debtor. | No. 09-50259<br>Chapter 11 |
| APPALACHIAN OIL COMPANY, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE VIRGINIAN TRAVEL PLAZA, INC.,<br><br>Defendant. | Adv. Pro. No. 10-5063 |

# M E M O R A N D U M

APPEARANCES:

    Mark S. Dessauer, Esq.                         Daniel R. Bieger, Esq.
    Hunter, Smith & Davis                          Copeland & Bieger, P.C.
    Post Office Box 3740                           Post Office Box 1296
    Kingsport, Tennessee 37664               Abingdon, Virginia, 24210
    *Attorney for Plaintiff*                           *Attorney for Defendant*

This adversary proceeding is before the court on the motion of the debtor Appalachian Oil Company ("AppCo") pursuant to Federal Rule of Civil Procedure 59(e)[1] to reconsider this court's memorandum opinion and order entered June 28, 2011. In that ruling, this court denied AppCo's motion for summary judgment and granted the summary judgment motion of defendant Virginian Travel Plaza Inc. ("VTP"), having concluded that the transfers that AppCo sought to avoid as preferential under 11 U.S.C. § 547(b) were not property of the debtor. In the present motion, AppCo argues that in reaching that ruling, the court erroneously concluded that a bailment relationship existed between the parties and that tracing was not required. For the reasons discussed below, this court reaffirms its bailment conclusion, but reverses itself on the tracing issue. Accordingly, AppCo's motion to reconsider will be granted. As to the parties' original summary judgment motions, VTP's motion will be denied, and AppCo's granted. This is a core proceeding. *See* 28 U.S.C. 157(b)(2)(F).

I.

The court's memorandum opinion set forth the following facts, taken from the parties' statements of undisputed material facts, the pleadings, and memoranda of law:

> Prior to AppCo's bankruptcy filing, AppCo supplied VTP with gasoline and other petroleum products that VTP sold at its convenience store. The parties' [May 7, 2004] agreement provided that AppCo would supply gasoline and other petroleum products upon credit terms to VTP, with AppCo then directly collecting the proceeds from credit card purchases that were made by customers at VTP's store. AppCo would process the credit card transactions, deposit the proceeds into its general operating account, and after deducting the amounts owed to it for the petroleum products, refund the balance to VTP.
>
> In late 2008, AppCo informed VTP that it was unable to supply gasoline and granted VTP permission to obtain an alternate supplier for 30 days or until it was notified that AppCo could resume deliveries. Consequently, VTP began purchasing gasoline from Mack Oil. Nonetheless, AppCo continued to collect the proceeds from the credit card sales at VTP's store, even though AppCo was no longer supplying any products to VTP, and continued to refund the collected proceeds to VTP, with no

---

[1] "A court may grant a Rule 59(e) motion to alter or amend [a judgment] if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc., v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

>deductions for any obligations owed to AppCo. After VTP switched to a new supplier of gasoline, AppCo refunded to VTP proceeds totaling $78,764.10 by transfers that took place in December 2008 and January 2009. . . .
>
>. . .
>
>On February 9, 2009, AppCo filed for bankruptcy relief under chapter 11. . . .
>
>On August 9, 2010, AppCo initiated the current adversary proceeding against VTP, later amending its complaint on January 24, 2011. AppCo alleges that the $78,764.10 in transfers it made to VTP in December 2008 and January 2009 are avoidable and recoverable as preferences. . . . In its counterclaim, VTP asserts that the $24,886.84 in credit card proceeds that AppCo had failed to refund to VTP do not constitute property of the estate and must be turned over to VTP, or alternatively, that AppCo is liable in this amount for conversion.
>
>Both parties have now moved for summary judgment on AppCo's amended complaint, and AppCo seeks summary judgment on VTP's counterclaim. VTP's memorandum in support of its motion for summary judgment presents only one argument: that the transfers to it were not property of AppCo.

As previously noted, this court granted VTP's motion for summary judgment on that basis. This court found determinative the Sixth Circuit Court of Appeals decision in *Computrex*, wherein the court held that monies received by a debtor for the purpose of paying certain vendors of the payor were held by the debtor essentially as a bailee and were therefore not its property, even though the debtor had commingled the subject monies with its own. *See Lyon v. Contech Constr. Prods, Inc. (In re Computrex, Inc.)*, 403 F.3d 807, 812 (6th Cir. 2005). Applying that holding to the present case, this court concluded that the parties' arrangement involving the transfers in question was similarly a constructive bailment or bailment implied in law. Although originally AppCo had collected VTP's credit card sale proceeds because VTP owed AppCo for gasoline, once VTP stopped purchasing gasoline from AppCo, AppCo became a mere collection agent for VTP, processing the credit card sales and then refunding to VTP the amounts collected. This court held that the refunded amounts were not property of the debtor AppCo because AppCo was merely returning to VTP its own property. *See id.* at 811 (Computrex's "brief possession of Contech's funds was to be similar to that of a transfer station along the road to payment of Contech's carriers") (citing *Shipley Co. v. Darr (In re Tap, Inc.)*, 52 B.R. 271, 276 (Bankr. D. Mass. 1985) and quoting *Jensen-McLean Co. v. Crouthamel Potato Chip Co. (In re Crouthamel Potato Chip Co.)*, 6. B.R. 501, 507 (Bankr. E.D. Pa. 1980) ("It has been consistently held that where there exists a true agency

3

relationship, such as a bailment, a transfer by the agent of agency property to the principal is not a voidable preference. The reason is that the transfer is not of property of the debtor but of property of the principal.")). Based on this conclusion, this court granted VTP's motion for summary judgment with respect to AppCo's preference claim, since a transfer of the property of the debtor is a required element of a preference under 11 U.S.C. § 547(b). In a footnote, this court rejected AppCo's argument that even if a bailment existed, the transfers were nonetheless subject to avoidance unless VTP could trace the transfers. The basis of the court's conclusion in this regard was that no tracing requirement was imposed in *Computrex*.

As to AppCo's motion for summary judgment on VTP's counterclaim, this court held that tracing was required in order for VTP to prevail on its counterclaim that the estate was holding funds belonging to VTP rather than the debtor. AppCo argued that it was entitled to summary judgment on this issue because tracing would be a virtually impossible task, since the funds AppCo had collected on VTP's behalf had been deposited in AppCo's general bank account and commingled with its other funds. No proof, however, was tendered on this issue; nor was it set forth in either party's statement of undisputed material facts submitted in connection with the summary judgment motions. Consequently, this court concluded that a genuine issue of material fact remained, precluding summary judgment on VTP's counterclaim.

In its present motion to alter or amend, AppCo makes three primary arguments as to why this court erred in granting summary judgment in favor of VTP. First, AppCo denies that there was a bailment and argues that a genuine issue of material fact remains on this issue. AppCo contends that this court's bailment determination could not have been made on the basis of the parties' statements of undisputed material facts and maintains that the court must examine the parties' May 7, 2004 sales agreement and the parties' conduct in order to determine the relationship actually intended by the parties. Second, AppCo argues that there are material differences between the facts of the present case and *Computrex* such that the court erred in concluding that *Computrex* governed the outcome. Last, AppCo argues that regardless of *Computrex* and whether a bailment existed, VTP must be able to identify or trace its property in order to reclaim it from the bankruptcy estate, which VTP has failed to do.

4

In response, VTP denies generally that there is a basis for this court to reconsider its previous ruling. The only exception to this general denial is that VTP concedes that AppCo's motion for summary judgment on VTP's counterclaim should be granted. In support of this concession, VTP amended its statement of undisputed material facts to state that it "has no facts to dispute AppCo's assertion that tracing the funds is an impossible task." Accordingly, AppCo will be granted summary judgment on VTP's counterclaim. As to whether AppCo's motion to reconsider should be granted, the three arguments raised by AppCo in support of the motion will be addressed in turn.

II.

*A. Whether Material Issues of Fact Remain*

The court turns first to AppCo's argument that a genuine issue of fact remains as to the nature of the parties' relationship, such that the court improperly resolved the issue on summary judgment. Tellingly, AppCo does not point to any particular fact to support its assertion that the court erred. It simply asserts that the court must first examine the parties' written agreement, the parties' conduct, and their intent before making this determination. Notwithstanding this contention, AppCo did not and has not tendered the parties' written agreement, nor does AppCo supply any evidence regarding the agreement's terms that contradict the court's findings. Similarly, AppCo has not articulated what conduct by the parties or what evidence of intent supports its position.

This failure is fatal to AppCo's current motion on this issue. VTP moved for summary judgment based on the contention that AppCo would be unable to prove an essential element of its preference claim, that the transfers to VTP were property of AppCo. In support of this contention, VTP relied on the undisputed fact that, during the time frame when the alleged preferential payments were being made, AppCo had no entitlement to the funds that it was collecting on behalf of VTP. The parties' course of business had changed, such that AppCo was no longer collecting the proceeds because it was owed for gasoline it had supplied VTP; rather, AppCo was simply processing the collections for the purpose of refunding them to VTP. VTP argued that it was entitled to summary judgment on this issue because AppCo held the money as a constructive bailee or trustee, and, as acknowledged by AppCo, "where property is held by the debtor as bailee, agent or trustee, the property does not become part of the debtor's estate and is not an 'interest of the debtor in property'

5

subject to avoidance under section 547(b)." *See City of Springfield Mass. v. Ostrander (In re LAN Tamers, Inc.*, 329 F.3d 204, 210 (1st Cir. 2003) ("The plain text of § 541(d) excludes property from the estate where the bankrupt entity is only a delivery vehicle and lacks any equitable interest in the property it delivers."). Faced with that motion, it was incumbent upon AppCo to produce evidence showing that there was a genuine issue as to a material fact. It did not do so. Consequently, any assertion now that the court must first consider the parties' written agreement, conduct, and intent, especially in the absence of any indication as to what this evidence would establish or how it would alter the court's findings, is immaterial and untimely.

Moreover, it must be observed that VTP's motion for summary judgment was not based on the assertion that the parties' May 7, 2004 written agreement provided for a bailment relationship or that the parties agreed to or intended to create an express bailment. Rather, VTP's argument was that the parties' arrangement after AppCo had stopped supplying gasoline had the effect of creating an implied bailment or trust. As noted in the memorandum opinion, "a bailment relation with all the attendant legal incidents may arise not only from an express agreement but may be implied in fact or in law." *Aegis Investigative Grp. V. Metro Gov't of Nashville and Davidson Cnty.*, 98 S.W.3d 159, 163 (Tenn. App. 2002). A constructive bailment or bailment implied in law is created "where a person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he should, on principles of justice, keep it safely and restore it or deliver it to the owner." *Id.* The court applied this legal standard to the case at hand and concluded that the undisputed facts met this standard. Because there is no assertion by AppCo that the court applied the wrong standard or that the facts before the court do not support its findings, AppCo's motion to alter or amend, to the extent that it asserts that a genuine issue of material fact exists as to the nature of the parties' relationship, must be denied.

*B. Whether Computrex Governs the Outcome.*

In its supplemental memorandum in support of its motion to alter or amend, AppCo cites four factual differences between *Computrex* and the present case, which distinctions demonstrate according to AppCo that *Computrex* does not govern the outcome herein. However, as discussed hereafter, none of the factual differences are relevant or support a different outcome, at least with respect to this court's bailment conclusion.

6

The first cited difference is that there was a specific agreement in place between the parties in *Computrex* that was heavily relied upon by the district court and referenced by the Sixth Circuit. In contrast in the present case, although there was a specific agreement in place, neither party has been able to produce it for consideration by the court. AppCo asserts that absent examination of the parties' written agreement, the court is unable to make a legitimate determination that there are similarities between here and *Computrex*. The court disagrees.

As admitted by AppCo, the parties' relationship changed when AppCo was unable to continue supplying fuel to VTP. Thus, the parties' written agreement pertaining to the parties' purchase and sale of fuel had less, if any, relevance to the parties' new relationship. Further, there appears to be no significant distinction between the terms of the written agreement in *Computrex*, and the parties' course of conduct herein. The *Computrex* agreement did not address title to the funds received by the debtor therein, and included no bailment, agency or trust language. Nor was there a requirement in *Computrex* that the debtor segregate or separately account for the funds it received from the defendant. The only exceptional provision in the *Computrex* agreement was that the debtor would have the funds in its possession for less than 24 hours, which led the district court to infer that the debtor had no authority to do anything with the funds other than pay them over to the defendant's carriers. *See In re Computrex*, 403 F.3d at 811. In the present case, while there is no evidence that AppCo was required to transmit the collected proceeds to VTP within any particular time period, there is no indication that AppCo had any authority to do anything with the collected funds other than return them to VTP. Accordingly, the court finds no relevant distinction between the two cases on this point.

The second argued difference is that in *Computrex* the debtor received the funds from the defendant and then used it to pay the defendant's creditors, while in the present case, AppCo collected the proceeds from third parties, individuals who had made credit purchases at VTP's store, processed the proceeds, and then refunded the proceeds to VTP. While admittedly this is a distinction between the two cases, the distinction appears to be irrelevant for purposes of this issue. In both instances, the debtor had no authority to do anything with the funds other pay them (or refund them) in accordance with the parties' agreement.

The third alleged difference is that, based on the oral argument before the bankruptcy court in *Computrex*, the defendant therein was concerned that if it lost the preference action, it would essentially have to pay its carriers twice: the first time when it gave the funds to the debtor for payment to its carriers, and the second time when the defendant returned to the bankruptcy trustee the payments that the debtor had paid on the defendant's behalf to its carriers. The *Computrex* defendant argued that notwithstanding this double payment, it would have a claim against the bankruptcy estate only for the funds it returned as a preference, not for the funds that the debtor had paid out to the defendant's carriers. AppCo contends that in the present case, in contrast with *Computrex,* there is no risk of double payment.

Contrary to AppCo's argument, the two cases are not dissimilar. In the *Computrex* case, the defendant presumably received a benefit from the debtor's payment to the defendant's carriers: satisfaction of the defendant's legal obligation to the carriers for the services they had provided. Thus, there was no logical basis for the *Computrex* defendant to have a claim against the bankruptcy estate for the funds that the debtor had rightfully paid on the defendant's behalf. In the present case, VTP could make the same invalid "double payment" argument made by the defendant in *Computrex*. Under the parties' original agreement, AppCo was collecting VTP's credit card sale proceeds so that AppCo could apply the proceeds to the amounts owed it by VTP for fuel purchases. When AppCo could no longer supply fuel, VTP had to purchase fuel from a third party, Mack Oil. VTP could contend, if required to return as preferences the funds refunded to it by AppCo, that it has paid for the same fuel twice: the first time to Mack Oil for fuel it actually provided to VTP, and the second time to AppCo in accordance with its prior arrangement even though AppCo was no longer supplying fuel. Thus, the alleged distinction between the instant case and *Computrex* on this point is illusory.

The last point made by AppCo as to the differences between the present case and *Computrex* is that tracing was not an issue in the latter case. This issue is the subject of AppCo's third argument in support of its motion to alter or amend and will be addressed below.

*C. Whether Tracing is a Requirement for a Bailment*

AppCo's last argument is that the court erred because it did not require VTP to trace its

8

funds. AppCo maintains that, regardless of the true nature of the parties' relationship, for VTP to prevail in this preference action it must establish that the funds actually transferred to it were the same funds held by AppCo as bailee because VTP was paid from AppCo's general bank account. As noted, this court summarily rejected that argument in its prior memorandum opinion, observing that no tracing requirement was imposed in *Computrex*. Nonetheless, this court held that VTP must be able to trace its funds in order to prevail on its counterclaim for amounts still owed by the debtor as of AppCo's bankruptcy filing. In its motion to alter or amend, AppCo asserts that this court took inconsistent positions on the tracing issue without explanation. AppCo also argues that no significance should be attached to the absence of a tracing discussion in *Computrex,* noting that the Sixth Circuit did not expressly hold in *Computrex* that tracing was not required; rather, tracing simply was not addressed by the court. AppCo maintains that, notwithstanding its absence in *Computrex*, tracing is nonetheless required as a matter of law. Upon reconsideration, this court agrees, and concludes that it made a clear error of law when it held otherwise.

AppCo is correct that tracing was not addressed by the court of appeals in *Computrex*, even though payments had been made to the defendant therein from the debtor's general bank account. In light of this critical fact, this court can only conclude that tracing was not addressed simply because it was not raised by the parties. The record of the *Computrex* case submitted by AppCo in connection with its supplemental memorandum indicates that the tracing issue was never raised at any level, including before the bankruptcy and district courts.

Nonetheless, after a thorough examination of the law in this area, this court is convinced that tracing must occur in order for a preference defendant paid from a debtor's general bank account to prevail when it asserts that it was paid with non-debtor funds. The Sixth Circuit Court of Appeals extensively addressed tracing in the preference context in *First Federal of Michigan v. Barrow*, 878 F.2d 912 (6th Cir. 1989). In that case, the debtor matched interested property owners and available lenders for the purpose of arranging and servicing secured loans between the matched parties. The debtor would then collect from the various property owners the loan installment payments along with property taxes and insurance, deposit and commingle the collected monies in the debtor's general bank accounts, and then at regularly designated intervals pay the mortgage holders, taxing authorities, and insurance agencies. *Id.* at 913-14. After the debtor filed for bankruptcy relief, the

9

trustee sued to recover as preferences the payments made to these parties within 90 days of the bankruptcy filing. *Id.* at 914. In response, the defendants argued that the debtor had held the collected funds in constructive trust such that the payments were not property of the debtor. The Sixth Circuit Court of Appeals held that in order to advance this argument, the defendants must trace the trust funds through the debtor's commingled bank accounts, which the defendants had failed to do. "It is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemption from a bankrupt estate must identify the trust fund in its original or substituted form." *Id.* at 915. Because "the purported constructive trust consisted of money, which had no extrinsic identifiable characteristics of its own," that was deposited in the debtor's account "with unidentifiable funds received from innumerable and diverse other sources," the alleged trust "funds irretrievably lost their identity and 'tracing' became a futile pursuit as a result of which the controversial payments . . . became avoidable transfers within the meaning of 11 U.S.C. § 547(b) and 550(a)." *Id.* at 915-16 (citing *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C. Cir. 1987)).

In support of its argument that tracing is not required, VTP cites *Begier v. Internal Revenue Service*, 496 U.S. 53 (1990), decided a year after the Sixth Circuit's decision in *First Federal of Michigan*. In *Begier*, the Supreme Court considered whether prepetition payments of withholding and excise taxes to the IRS from the debtor's general operating account could be avoided and recovered as bankruptcy preferences. *Begier*, 496 U.S. at 53. The Court initially concluded that these taxes were statutory trust funds pursuant to a provision of the federal tax code, 26 U.S.C. § 7501, which states that "the amount of [trust-fund] tax . . . collected or withheld shall be held to be a special fund in trust for the United States." *Id.* at 61-62. The Court then turned to the question of whether the IRS was actually paid with the trust funds, explaining that the fact that a debtor held trust funds is insufficient to answer the question of whether the *particular dollars* that the debtor paid to the alleged preference creditor were trust funds or property of the debtor. *Id.* at 62 (emphasis in original). "Only if the creditor was actually paid with the trust funds has there been no transfer of property of the debtor and therefore no preference." *Id.*

In order to answer this question, the court turned first to § 7501, the statute creating the trust. Finding no guidance in the provision, the Court then looked to common law tracing rules but found

10

them unhelpful since they were designed for a system in which particular property is identified as the trust res. *Id.* at 62-63. The Court observed that "[a] § 7501 trust is radically different from the common-law paradigm" because it creates a trust in "an abstract 'amount'–a dollar *figure* not tied to any particular assets–rather than in the actual dollars withheld." *Id.* at 62 (emphasis in original).

Unable to find the answer in the statute or in common law principles, the Supreme Court turned to the legislative history of § 547 and § 541 of the Bankruptcy Code, the latter of which defines property of the estate. The Court noted that prior to the enactment of the Bankruptcy Code in 1978, the Court in *United States v. Randall*, 401 U.S. 513 (1971), had refused to permit a bankruptcy debtor to make postpetition payments of trust fund taxes to the IRS ahead of administrative expenses. Unhappy with this ruling, Congress addressed the issue in the 1978 Code by expressly providing in § 541 that property of the estate would not include property held in trust for another. In a House Report, one Congressman discussed the effects of the new statutory language on the rule established in *Randall*:

> A serious problem exists where "trust fund taxes" withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.

*Begier*, 496 U.S. at 65 (quoting H.R. Rep. 95-595, at 549 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6500).

The Supreme Court in *Begier* concluded that these the same "reasonable assumptions" should apply to prepetition payments of trust-fund taxes to the IRS, but queried how extensive the "required nexus" between the trust and the payments should be. *Id.* at 66. The Court found the answer in the following House Report:

> A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.

*Id*. at 66 (quoting H.R. Rep. 95-595, at 373 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).

11

Based on the foregoing, the Court held that "[t]he debtor's act of voluntarily paying its trust-fund tax obligation therefore is alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." *Begier*, 496 U.S. at 66-67. Because the debtor in *Begier* had voluntarily paid its trust-fund tax obligation to the IRS, the Court held that it was unnecessary for the IRS to perform the common-law tracing in order to prevail in the preference action against it. *Id.*

In the present case, VTP cites *Begier* for the proposition that it is not required to trace the payments received by it to the bailed funds because AppCo voluntarily made the payments, thereby providing the required nexus. This court disagrees. The Supreme Court in *Begier* was focused solely on trust-funds taxes pursuant to § 7501 of the Internal Revenue Code for which common-law tracing principles could not be applied because the trust res as defined by statute was in an abstract dollar "*amount*" rather than specific property, the common-law paradigm. In fact, the court even utilized the phrase "special context" to describe how the issue before it arose. *Id.* at 63. There was simply no indication in *Begier* that the Court was abandoning the traditional tracing rule in contexts outside of § 7501 trusts. *See Wyle v. S&S Credit Co. (In re Hamilton Taft & Co.)*, 53 F.3d 285, 290 (9th Cir. 1995), *vacated as moot*, 68 F.3d 337 (1995) (observing that it should not "extend the holding in *Begier* more broadly than is necessary to accomplish its purposes when doing so necessarily undermines the Bankruptcy Code's core principle of equality of distribution among creditors" and that "[i]n the absence of any clear policy reason for extending *Begier*, we apply the common law of trusts"); *United States v. Borock (In re Ruggeri Elec. Contracting, Inc.)*, 214 B.R. 481, 486 n.3 (E.D. Mich. 1997) ("Almost without exception, the Bankruptcy Courts have interpreted the Supreme Court's reasonable assumptions test [in *Begier*] narrowly."); *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 156, 151 (Bankr. D. Del. 2010) ("The *Begier* Court deviated from the common law tracing rules not because it found them lacking" but "due to the unique facts and circumstances raised by the specific type of trust at issue in the case. As such, the holding in *Begier* should be narrowly construed and the nexus test should only apply in cases where a court is faced with facts similar to those in *Begier*."); *Johnson v. Barnhill (In re Antweil)*, 154 B.R. 982, 987 (Bankr. D.N.M. 1993) ("*Begier* deals with a unique type of situation, a trust created for the benefit of the Internal

12

Revenue Service.").

Consistent with this conclusion, courts post-*Begier* have continued to require tracing outside the trust-fund tax context.[2] *See, e.g., Stoebner v. Consumers Energy Co. (In re LGI Energy Solutions, Inc.)*, 460 B.R. 720, 726 (B.A.P. 8th Cir. 2011) (utilities who received payments from commingled general account of debtors who had provided utility management and billing services had to trace funds to prevail in preference action); *Meoli v. Kendall Elec., Inc. (In re R.W. Leet Elec., Inc.)*, 372 B.R. 846, 855 (B.A.P. 6th Cir. 2007) (prepetition payments from debtor's commingled account subject to avoidance absent tracing of funds held in statutory trust under state contractors act); *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 601 (B.A.P. 2nd Cir. 2000) (preference defendant had burden of tracing their payments to express trust res); *In re Catholic Diocese of Wilmington, Inc.*, 432 B.R. at 158 (alleged beneficiaries of resulting trust bore burden of identifying and tracing trust funds if they have been commingled with non-trust funds in non-trust account); *Lovett v. Homrich Inc. (In re Philip Servs. Corp.)*, 359 B.R. 616, 628 (Bankr. S.D. Tex. 2006) (requiring tracing for commingled express trust funds under state contractor act); *but see Suwannee Swifty Stores, Inc. v. Ga. Lottery Corp. (In re Suwannee Swifty Stores, Inc.)*, 266 B.R. 544, 552-53 (Bankr. M.D. Ga. 2001) (tracing not required pursuant to *Begier* to protect from avoidance under § 549 of the Bankruptcy Code unauthorized postpetition transfers of trust funds to the Georgia Lottery Corporation); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros, Inc.)*, 243 B.R. 231, 240 (Bankr. D. Del. 2000) (concluding that although *Begier* dealt with taxes, its holding applied equally to all constructive trust cases under § 541(d)).

Admittedly, the majority of the foregoing cases, as well as *First Federal of Michigan*,

---

[2] Most courts have limited *Begier* exclusively to § 7501 trust fund taxes, although a few, including the Third Circuit Court of Appeals, have extended its holding to other types of trust-fund taxes. *See, e.g., City of Farrell v. Sharon Steel Corp.*, 41 F.3d at 98-99 (finding no significant distinction between § 7501 trust for federal withholding tax and trust created under Pennsylvania law for local income taxes, court concluded that common law tracing rules did not apply). This extension has been based in part on the language in *Begier* quoted from the House Report stating: "The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, *and other tax authorities*, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." *Begier*, 496 U.S. at 65 (quoting H.R. Rep. 95-595, at 549 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6500) (emphasis supplied)).

involved trusts, whereas the present case involves bailed funds. However, the court sees no relevant distinction between the two types of interests for purposes of tracing, as under both scenarios the recipient of the funds contends that it was paid with non-debtor monies, even though the payment came from a debtor's general account. *See Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 860 (8th Cir. 1996) (quoting 4 *Collier on Bankruptcy* ¶541.08 ("In a true consignment arrangement, bailment, or agency, recovery by the bailor, principal, or consignor rests upon identification. When the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the estate.")).

Because *Begier* is not applicable to the case at hand, it is necessary for VTP to trace its payments from AppCo's commingled bank account to the funds it collected on VTP's behalf in order to prevail on its contention that it was paid with funds that did not belong to AppCo. As discussed in *Leet Electric*, although a party seeking to avoid a preference has the burden of establishing all of the elements of a preference under § 547(b), *see* 11 U.S.C. § 547(g), AppCo met this burden by the fact that VTP was paid from AppCo's general account. *See In re R.W. Leet Elec., Inc.*, 372 B.R. at 855-57. Faced with AppCo's properly supported motion for summary judgment on its preference claim, it was incumbent on VTP to come forward with evidence demonstrating the required tracing or otherwise suggesting that there is a genuine issue of material fact on this issue. *See id.* at 856 (citing, *inter alia, In re Carrozzella & Richardson*, 247 B.R. at 602 (once the trustee establishes that the creditor was paid from the debtor's commingled general account, the burden shifted to creditor to prove that debtor only had legal title and to trace its interest in the commingled funds)). Because VTP has failed to do either, AppCo is entitled to prevail on its claim that the funds it paid to VTP prepetition were property of the debtor.

D. *Whether AppCo is Entitled to Summary Judgment on its Preference Claim*

The sole issue addressed by the court in its earlier memorandum opinion was the question of whether the transfer involved property of the debtor, the first required element of a preference under 11 U.S.C. § 547(b). Under this provision, a chapter 11 debtor in possession like AppCo may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

14

>    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>    (3) made while the debtor was insolvent;
>
>    (4) made—
>
>    >    (A) on or within 90 days before the date of the filing of the petition; or
>    >
>    >    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>    (5) that enables such creditor to receive more than such creditor would receive if—
>
>    >    (A) the case were a case under chapter 7 of this title;
>    >
>    >    (B) the transfer had not been made; and
>    >
>    >    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b); *see also Union Bank v. Wolas*, 502 U.S. 151, 154-55, 112 S. Ct. 527 (1991). As the party seeking to avoid the transfers, AppCo has the burden of proof on all elements. *See* 11 U.S.C. § 547(g).

To carry its required burden, AppCo submitted its statement of undisputed material facts which establishes that AppCo made nine payments totaling $78,764.10 to VTP between December 4, 2008, and January 6, 2009, prior to AppCo's bankruptcy filing on February 9, 2009. As previously indicated, the court concludes that these payments were property of the debtor AppCo because they were made from AppCo's general operating bank account. AppCo's statement also establishes that VTP was a "creditor" within the meaning of § 547(b)(1). Section 101 of the Code broadly defines "creditor" to include an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "Claim" is defined as a "right to payment . . . ." 11 U.S.C. § 101(5)(A). Undeniably, VTP had a "right to payment" of the credit card proceeds that AppCo had collected on VTP's behalf.

Similarly, the court finds that the transfers were "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). "Antecedent debt" is not defined in the Code, but it is well settled that a debt is "antecedent" if it is incurred before the transfer. *Official Comm. Of Unsecured Creditors v. Whalen (In re Enron)*, 357 B.R. 32, 48 (Bankr. S.D.N.Y. 2006) ("the court concludes from a textual analysis that section 547(b) applies to transfers

on account of debts which precede and are not contemporaneous with the transfer, and for which the debtor is liable"). The antecedent debts in this case consisted of AppCo's obligation to pay to VTP sums that it had collected on its behalf, and this obligation plainly arose prior to the transfers. Undisputedly, the transfers were made within 90 days preceding AppCo's bankruptcy filing as required by § 547(b)(4), and the insolvency requirement of § 547(b)(3) is established by the presumption of insolvency set forth in § 547(f), a presumption that VTP has not attempted to overcome.

The last element of § 547(b) is set forth in paragraph (5) and requires that the transfers enabled the creditor to receive more than it would if the case were a chapter 7 liquidation case and the transfers had not been made. As proof on this element, AppCo points out that VTP is an unsecured creditor and that unsecured creditors are not receiving payment in full in this case. The latter fact is established by AppCo's confirmed plan of reorganization which estimates the distribution to unsecured creditors at 2%. Accordingly, § 547(b)(5) is satisfied.

### III.

Based on all of the foregoing, the court concludes that AppCo has demonstrated all of the elements of a preference under § 547(b). VTP has not alleged any § 547(c) defenses. Accordingly, AppCo is entitled to summary judgment on its claim that the transfers in question constituted avoidable preferences. An order so holding, as well as granting AppCo summary judgment as to VTP's counterclaim, will be entered.

# # #